# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CATHYLEE ROSADO,

        Plaintiff,

v.                                     **Case No: 6:17-cv-1726-Orl-DCI**

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

## MEMORANDUM OF DECISION

Cathylee Rosado (Claimant) appeals to the District Court from a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI). Doc. 1; R. 1-6, 229-33, 237-43. Claimant argued that the Administrative Law Judge (the ALJ) erred by failing to properly evaluate Claimant's testimony. Doc. 20 at 26-31. For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

## I.      THE ALJ'S DECISION

In January 2014, Claimant filed applications for DIB and SSI. R. 17, 229-33, 237-43. Claimant initially alleged a disability onset date of May 20, 2010, but later amended her alleged onset date to March 6, 2012. R. 17, 229-33, 237-43.

The ALJ issued her decision on December 5, 2016. R. 17-36. In her decision, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, status post surgeries; a sacroiliac joint dysfunction; polyarthritis; fibromyalgia; and obesity. R. 19-20. The ALJ found that Claimant had a residual functional

capacity (RFC) to perform less than a full range of sedentary work as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a).[1]  R. 24.  Specifically, the ALJ found as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work requiring lifting or carrying 8 pounds occasionally, sitting a total of 6 hours in an 8-hour workday, and standing and/or walking a total of 2 hours in an 8-hour workday, with the need to change positions during the day every 30 minutes, with pushing or pulling consistent with the lifting or carrying noted earlier, with occasional climbing of ramps or stairs, no climbing of ladders, ropes or scaffolds, occasionally stooping, kneeling, crouching or crawling, avoiding a concentrated exposure to hazards (machinery or heights) and performing unskilled work that is simple and routine due to pain, and medication side effects.

*Id.*  The ALJ posed a hypothetical question to the vocational expert (VE) that was consistent with the foregoing RFC determination, and the VE testified that Claimant was capable of performing jobs in the national economy.  R. 76-77.  The ALJ thus found that Claimant was capable of performing jobs that existed in significant numbers in the national economy.  R. 34-36.  Therefore, the ALJ found that Claimant was not disabled between the alleged onset date and the date of the ALJ's decision.  *Id.*

## II.    STANDARD OF REVIEW

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is 'supported by substantial evidence and based on proper legal standards.'"  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted).  The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The district court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III.    ANALYSIS

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In doing so, the ALJ must consider all relevant evidence. 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id.* at §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *See id.* at 1562.

Here, the ALJ discussed Claimant's testimony before engaging in a thorough, detailed discussion of the medical records. R. 25-32. Following the ALJ's discussion of the medical records, the ALJ stated as follows:

> Thus, after considering the evidence of record, the undersigned finds that the claimant's medically determinable severe impairments (listed in Finding 3 above) could reasonably be expected to cause her alleged symptoms; however, the claimant's and her husband's statements concerning the intensity, persistence, and limiting effects of these symptoms are only *partially consistent with all the relevant medical evidence and other evidence in the claimant's case record* (as set forth in

this Finding) which is consistent with sedentary work with the additional limitations stated in Finding 5 above (SSR 16-3p).

> The claimant's husband's statements in Exhibits B-11E and B-14E were considered and given some weight. However, since he is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of his statements is questionable. Moreover, by virtue of the relationship as the husband of the claimant, he cannot be considered a disinterested third party witness whose statements would not tend to be influenced by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to his statements because it, *like the claimant's, is simply not consistent with the preponderance of the medical evidence **highlighted above***.

R. 32 (emphasis added). Then, after specifically noting that Claimant's testimony was not consistent with the ALJ's preceding discussion of the medical records, the ALJ further elaborated with regard to Claimant's activities of daily living and response to treatment as follows:

> As to activities of daily living, the claimant and her husband, in forms completed in May 2014, stated that she took care of her own hygiene, although with physical difficulty from pain; prepares simple meals, such as cereal, instant oatmeal, sandwiches, and frozen dinners; folds clothes; makes her bed; does light dusting; does some sweeping; drives 3 blocks or 10 minutes at a time; reads short periods of time; talks to others by telephone or computer 2 to 3 times a week; has visits from family once a month; follows instructions; and, gets along "fine" with authority figures (Exhibits B-9E, B-11E, B-12E, B-14E, and B-15E). In addition, the claimant testified that she took care of her own hygiene, although on very bad days with assistance from her husband with dressing up or hair-washing; sweep the floors; does laundry; cooks dinner and prepares easy meals, such as a pasta dish with chicken; and, drives for 15 minutes at a time, although her parents reportedly moved in to help with cooking, the laundry, driving, shopping, and caring for her daughter.

> Thus, the claimant is not debilitated to the point of being unable to independently perform activities of daily living. Also, the claimant's daily activities are not limited to the extent that one would expect from an individual totally disabled by the claimant's impairments.

> As to medications, the claimant, at the hearing and in completed forms, stated that they would decrease her pain level from 6-8 without meds, down to 4-5 with meds, but that they resulted in adverse side effects, such as dizziness, drowsiness, sleepiness, tiredness, blurred vision, inflammation, dry mouth, heartburn, an upset

stomach, nausea, and weight gain (Testimony and Exhibits B-6E/3, B-9E/8, B-10E, B-11E/9, B-12E/5, B-13E, B-14E/8, B-15E/8, B-18E/5, and B-19E/5).

The medical evidence, however, indicates that the claimant was awake, alert, oriented, and in no acute or apparent distress at her examinations (Exhibits B-3F/3; B-9F/7; B-11F/3; B-16F/22, 39; B-18F/14, 26; B-19F/5; and B-20F/20-21). Also, at the hearing, the claimant was not perceived to be dizzy, drowsy, unfocused, or otherwise in distress due to alleged adverse medication side effects. The hearing is, of course, only one time and hardly dispositive of the issue of side effects. Nonetheless, the medical evidence of record (MER) does not disclose any major concerns about side effects by the several doctors who examined/treated the claimant.

However, taking into account the pain and symptoms that can reasonably be expected based on claimant's impairments and considering the side effects that can reasonably be expected based on claimant's medications, the undersigned limited the claimant to unskilled work that is simple and routine.

As to alternative methods of treatment, the claimant testified that she underwent pain injections, as needed (Exhibit B-18F/40, 46). On October 7, 2014, the record at Neurospine Institute noted that a cervical spine injection in August (2014) did not affect the claimant at all (Exhibit B-15F/11). On December 17, 2014, the record at Neurospine Institute noted that an SI joint injection provided the claimant significant relief for about 3 days, and that the claimant was using a wrist splint for her right carpal tunnel syndrome (CTS). (Exhibit B-15F/9). On July 31, 2015, the record at Neurospine Institute noted that a diagnostic injection of the claimant's right SI joint provided substantial relief (Exhibit B-15F/4). In forms completed in May 2014, the claimant had stated that she underwent physical therapy (P.T.), stretches, and walking, and that she used a TENS unit, hot/cold packs, Biofreeze, and other topical pain ointments (Exhibits B10E, B-13E, and B-15F/3-4). In addition, from 2012 to 2016, the claimant underwent chiropractic treatment (Exhibits B-4F and B-14F).

Therefore, there is evidence of improved symptoms with treatment and medications.

Thus, while it is reasonable to conclude that the claimant has some limitations, the evidence as a whole does not substantiate any cause for such debilitating limitations as described by the claimant that would preclude all work activity, including substantial gainful activity, since the alleged onset date.

R. 32-33.  Thus, the ALJ provided three reasons for discrediting Claimant's testimony: (1)

Claimant's testimony was inconsistent with the preponderance of the medical evidence; (2)

Claimant's testimony was inconsistent with Claimant's activities of daily living; and (3)

Claimant's testimony was inconsistent with the evidence of Claimant's improved symptoms with treatment and medications.

Claimant argues that the ALJ failed to properly evaluate Claimant's testimony. Specifically, Claimant argues that substantial evidence does not support two of the reasons the ALJ provided for discrediting Claimant's testimony – that Claimant's testimony was inconsistent with Claimant's activities of daily living and with the evidence of Claimant's improved symptoms with treatment – and, therefore, that the Court should remand this case for further consideration. The undersigned disagrees.

First and foremost, Claimant failed to address one of the reasons that the ALJ discredited Claimant's testimony – that it was inconsistent with the preponderance of the medical evidence. Thus, Claimant waived any argument that the ALJ somehow erred by finding that Claimant's testimony was inconsistent with the preponderance of the medical evidence. *See, e.g.*, *Jacobus v. Comm'r of Soc. Sec.*, No. 15-14609, 2016 WL 6080607, at *3 n.2 (11th Cir. Oct. 18, 2016) (stating that claimant's perfunctory argument was arguably abandoned); *Gombash v. Comm'r of Soc. Sec.*, 566 Fed. App'x. 857, 858 n.1 (11th Cir. 2014) (stating that the issue was not properly presented on appeal where claimant provided no supporting argument); *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."). Regardless, the Court finds that the ALJ's statement – that Claimant's testimony was inconsistent with the preponderance of the medical evidence – is supported by substantial evidence. *See* R. 25-32 (noting that Claimant was consistently found to be in no apparent distress and noting Claimant's normal strength, reflexes, gait, sensations, coordination, muscle tone, and range of motion).

Next, the Court finds that the ALJ properly considered Claimant's daily activities. Contrary to Claimant's argument, it was not improper for the ALJ to consider Claimant's activities of daily living when weighing Claimant's testimony. *See* 20 C.F.R. § 404.1529(c); *Dyer*, 395 F.3d at 1210-11. And the ALJ's finding that Claimant's testimony was inconsistent with Claimant's activities of daily living is supported by substantial evidence. Indeed, the ALJ noted that Claimant was able to take care of her own hygiene, sweep the floors, do laundry, make the bed, read for short periods of time, cook simple meals, drive for up to fifteen minutes at a time, and communicate using a computer and telephone. R. 32. Further, to the extent that Claimant was attempting to argue that the ALJ failed to account for Claimant's testimony that her daily activities were dependent on her level of pain, Claimant's argument is without merit. The ALJ specifically noted Claimant's testimony that she had "very bad days" and that her parents had reportedly moved in to assist her. R. 32.

Finally, the Court finds that substantial evidence supports the ALJ's finding that there is evidence of improved symptoms with treatment and medications. Specifically, the ALJ noted Claimant's testimony that her pain improved when taking medication. R. 32-33, 62-63. And with regard to Claimant's complaints of adverse side effects, the ALJ correctly noted that the medical evidence indicates that Claimant was awake, alert, oriented, and in no acute distress at her examinations. R. 32-33. The Court further notes that the ALJ's finding is supported by additional evidence in the record. *See* R. 855, 858, 861, 867, 876, 883, 886, 889 (noting that Claimant reported no side effects and that Claimant was able to maintain a normal daily routine while on medication).

Claimant also argued that the ALJ erred by considering Claimant's demeanor at the hearing when determining whether Claimant was suffering from adverse side effects. But this argument

is without merit.  Although an ALJ may not solely rely on a claimant's demeanor at the hearing, the ALJ may consider a claimant's demeanor.  *See Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) ("Additionally, the ALJ may consider the claimant's 'appearance and demeanor during the hearing' as a basis of credibility, although he cannot impose his observations in lieu of a consideration of the objective medical evidence.") (citation omitted); *Salazar v. Comm'r of Soc. Sec.*, 372 F. App'x 64, 67 (11th Cir. 2010) (similar) (citation omitted).  Here, it is clear that Claimant's demeanor was only one factor that the ALJ considered when determining whether Claimant was suffering from adverse side effects.  Indeed, the ALJ specifically noted that her observations about Claimant's demeanor at the hearing "are hardly dispositive of the issue," and the ALJ provided additional justifications for her finding regarding Claimant's alleged adverse side effects.  *See* R. 33 (citing to Claimant's medical records in support).  Regardless, even if the ALJ had erred by considering Claimant's demeanor at the hearing, the error would have been harmless because the ALJ provided other valid reasons for discrediting Claimant's testimony that are supported by substantial evidence.  *See Wilson v. Comm'r of Soc. Sec.*, 500 F. App'x 857, 859-60 (11th Cir. 2012) (noting that remand was unwarranted even if the ALJ cited an improper finding to support his adverse credibility determination because there was sufficient evidence within the record to support the ALJ's other reasoning for his adverse credibility determination); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (holding that an ALJ's failure to consider a claimant's inability to afford treatment did not constitute reversible error when the ALJ did not rely primarily on a lack of treatment to find that the claimant was not disabled); *cf. D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (per curiam) (rejecting argument that ALJ failed to accord proper weight to treating physician's opinion "because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it.")

In sum, the ALJ offered three clearly-articulated reasons for discrediting Claimant's testimony that are supported by substantial evidence. And the Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *See Foote*, 67 F.3d at 1562. To the extent that Claimant was trying to argue that the ALJ's decision was not supported by substantial evidence because the facts cited by Claimant arguably support Claimant's position, Claimant's argument is without merit. The standard is not whether there is some evidence to support Claimant's position, but whether there is substantial evidence to support the ALJ's decision. *Barnes*, 932 F.2d at 1358 ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence.") (citation omitted). As previously discussed, substantial evidence supports the ALJ's decision.

In addition, the Court notes that Claimant provided no persuasive argument to suggest that the ALJ's alleged errors were harmful. The RFC specifically stated that Claimant was restricted to "performing unskilled work that is simple and routine *due to pain, and medication side effects*." R. 24 (emphasis added). And Claimant cited to no specific testimony or otherwise explained how Claimant's testimony allegedly contradicts the RFC. *Cf. Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (similar).

## IV. CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1.     The final decision of the Commissioner is **AFFIRMED**; and

2.     The Clerk is directed to enter judgment for the Commissioner and against Claimant, and close the case.

**DONE** and **ORDERED** in Orlando, Florida on January 29, 2019.

_____

DANIEL C. IRICK

UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Emily Ruth Statum
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
3505 Lake Lynda Dr.
Suite 300
Orlando, FL 32817-9801